IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FLORENCIO ROLAN | : | CIVIL ACTION |
| [AY4982] | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN V. COLEMAN, et al. | : | NO. 08-5438 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                    July 29, 2010
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a counseled Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner is currently incarcerated at the State Correctional Institution (SCI)-Fayette in Labelle, Pennsylvania, where he is serving a life sentence for murder in the first degree and possession of an instrument of a crime. For the reasons which follow, it is recommended that Mr. Rolan's Petition for Writ of Habeas Corpus be denied and dismissed.

## I. BACKGROUND[1]

The background of this case was set forth by the Superior Court of Pennsylvania as follows:

> On the evening of Friday, May 13, 1983, the victim, Paulino Santiago, and Robert Aponte were selling marijuana near 17th and Wallace Streets in Philadelphia. Paulino's brother, Francisco, and [Petitioner] were nearby, among a crowd estimated at thirty to fifty people. Around 8:30 P.M. a driver pulled up to buy a "nickel bag," five dollars worth of marijuana. Aponte and Paulino Santiago argued

_____

[1] In preparing this report and recommendation, I have reviewed the following documents: Petitioner's habeas petition; the memorandum of law in support of his petition; the addendum to Petitioner's brief; the appendix in support of Mr. Rolan's petition; the Commonwealth's Response to Petition for Writ of Habeas Corpus, inclusive of all exhibits thereto; Petitioner's reply memorandum; the Commonwealth's sur-reply to Petitioner's reply; correspondence to the Court from counsel; the state court record, and the record of this Court.

over who should get the money for the sale. [Petitioner] sided with Aponte, his cousin. The argument continued for about fifteen minutes until [Petitioner] departed for the house of a friend across the street. Francisco Santiago went to an abandoned house, at 1629 Wallace Street, a few doors from the corner, to relieve himself. His brother followed.

It is undisputed that a few minutes later, inside the abandoned house, [Petitioner] killed Paulino Santiago with a single shot to the chest from a .22 caliber rifle, then fled out a back alley and left the neighborhood. Police found the rifle in the alley about a block away from the abandoned house. The next day [Petitioner] fled to New York City, and was not apprehended until the following November, when he returned to Pennsylvania after waiving extradition.

Francisco Santiago, initially uncooperative with the police, testified at the preliminary hearing and at trial that [Petitioner] had killed his brother after entering the abandoned building and demanding money. He further testified that he tried to grab the rifle away from [Petitioner], who "clicked" it at him before fleeing. At trial, after an on-the-record colloquy, in which his request to address the jury directly was repeatedly refused by the trial court, [Petitioner] stated that he did not wish to testify. In May of 1984, a jury acquitted [Petitioner] of robbery, but convicted him of first degree murder and PIC. The jury fixed his penalty at death, and our Supreme Court affirmed the conviction. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988).

[Petitioner's] appointed counsel, Melvin B. Goldstein, Esq., died on October 14, 1985, during the pendency of the appeal. In 1996, present counsel filed a petition under the Post Conviction Relief Act. Testifying at the PCRA hearing in 1996, [Petitioner] raised a claim of self-defense. He alleged that he followed Francisco Santiago into the abandoned house, and Paulino Santiago entered after he was already inside, charging at him with a kitchen knife. He asserted that he came in unarmed, but fired in self-defense after he noticed a loaded rifle lying on the floor.

He further alleged that prior counsel had failed to investigate two witnesses for the trial who would have supported his self-defense claim, and merely forwarded the names [Petitioner] gave him, Aponte and Daniel Vargas, to the Commonwealth for investigation to determine if they were available to testify as alibi witnesses. He also

2

claimed he had wanted to testify at trial, but prior counsel had prevented him from doing so.

Daniel Vargas also testified at the PCRA hearing. In 1984, contacted by a Commonwealth homicide investigator, Vargas had refused to cooperate. His signature appears on an interview document asking if he would be an "alibi" witness, indicating that he was **not** willing to give a statement. In 1996 Vargas, while serving a term in Graterford prison, signed a notarized affidavit prepared by [Petitioner's] current counsel. (*See* Affidavit of Daniel Vargas, 2/16/96, Commonwealth's Exhibit C-30). In the affidavit he stated that he saw the three men enter the building together, (*id.* at ¶5), [Petitioner] first, followed by Paulino Santiago, who "was chasing" [Petitioner] into the house with a kitchen knife, shouting, "I'm going to kill you, Motherfucker." Vargas averred that "some time after" he heard a shot.

On direct examination at the PCRA hearing Vargas placed himself at the steps of the abandoned house, trying to prevent Paulino Santiago from entering. (N.T. Trial, 1/22/07, at 41). He also claimed he had helped Francisco Santiago carry Paulino's body out of the abandoned house to the street. On cross-examination, he first testified he was about a half a block away from the abandoned house, then a car length away, then claimed he was running towards the house when he heard the shot. (*Id.* at 100).

Challenged on cross-examination, Vargas repeatedly tried to explain away omissions and discrepancies between his testimony and his affidavit by claiming that while he was in Graterford prison he only had five minutes to talk on the telephone with counsel. Pressed further, he accused the Commonwealth's attorney of trying to confuse him. He claimed that he signed the investigator's statement because he thought the request was to testify **against** [Petitioner], despite the plain language of the request on the form. He later denied signing the statement. He conceded on re-direct examination that apart from the encounter with the homicide investigator, he had not come forward earlier because he knew both families and "did not want to get involved." (*Id.* at 108). He did not explain his change of heart.

The PCRA court rejected [Petitioner's] claim of ineffective assistance of counsel during the guilt phase of his trial as waived, summarily discussing the claims on the merits, but granted him a new sentencing hearing, concluding he received ineffective assistance of

counsel during the penalty phase. A panel of this Court affirmed the grant of a new hearing on sentencing. *Commonwealth v. Rolan*, (No. 4581 Philadelphia 1997), Pa.Super. filed June 9, 1999). However, it disagreed that the claims of ineffective assistance at the guilt phase had been waived. Rather, the panel concluded on review that [Petitioner's] claims of ineffective assistance at the guilt phase of the trial were without merit. *Id.* at 5-10. Specifically, it concluded that in view of Vargas' admitted motive for refusing to become involved, the assertion that trial counsel was ineffective for failing to call him as a witness was without arguable merit. *Id.* at 7.

Similarly, as to Robert Aponte, by then also deceased, the *Rolan* Court concluded that an unsworn statement Aponte signed and gave to a Commonwealth homicide investigator in which he claimed that he met [Petitioner] on the street, and asked him "[W]as [he] alright, he didn't stab you or anything?" was not relevant to [Petitioner's] ineffectiveness claim. Because Aponte did not claim to have witnessed the crime, or to have seen the victim with any sort of weapon, the Court opined that "the excerpt merely establishes that Aponte was aware that [Petitioner] had engaged in an altercation and was not immune to the potential danger posed by life on the street." *Id.* at 8. Therefore, the Court concluded, the assertion of ineffectiveness for failing to call Aponte as a trial witness "must fail." *Id.*

The Court also decided that despite Santiago's incomplete recitation of his agreement with the Commonwealth, "in view of other evidence highly probative of [Petitioner's] guilt, we cannot conclude that the Commonwealth's failure to expose the full extent of Santiago's 'deal' as a source of potential bias, 'so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Id.* at 13 (citation omitted).

Finally, the Court also concluded that counsel was not ineffective for preventing [Petitioner] from testifying. It found that despite [Petitioner's] claim that he "consistently sought to testify at trial," the PCRA court properly decided that [Petitioner] knowingly and voluntarily declined to testify at the trial in 1984 after consultation with counsel and a colloquy with the trial court. As previously noted, an on the record colloquy confirmed that [Petitioner] insisted he be allowed to address the jury directly, and declined to testify after it became clear the trial court would not permit him to do so. *Id.* at 10.

4

After a new penalty hearing on April 25, 2003, the jury deadlocked and [Petitioner] was sentenced to life imprisonment. [Petitioner] had also petitioned for a writ of *habeas corpus* in federal court. In 2004, afer a hearing, the United States District Court for the Eastern District of Pennsylvania granted the writ with a stay to permit retrial, based on [Petitioner's] claim that he was denied effective assistance of counsel during the guilt phase. *Rolan v. Vaughn*, 2004 WL 2297407 (E.D.Pa. 2004) (unpublished decision). It concluded that [Petitioner's] trial counsel was ineffective for failing to investigate the two witnesses, Aponte and Vargas, to support a claim of self-defense, disregarding the analysis and findings of the Superior Court. The Third Circuit affirmed, albeit "[w]hile [] marvel[ing] at [Petitioner's] serendipitous rifle []." *Rolan v. Vaughn*, 445 F.3d 671, 683 (C.A.3 2006):

> "We believe that Rolan's conviction was only 'weakly supported by the record; and that the testimony of Vargas (and Aponte) is 'sufficient to undermine confidence in the outcome.' Therefore, it is manifest that the Superior Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the PCRA trial court proceeding."

*Id.* (citations omitted).

[Petitioner] was re-tried before a jury and on January 24, 2007 again convicted of murder of the first degree and PIC. At re-trial, the 1984 preliminary hearing and trial testimony of the victim's brother, Francisco, who had died in 1998, was read into the record. Also at the second trial, the 1996 PCRA hearing testimony of Vargas, who had died in April of 2006, was read into the record as part of the defense case. Further, despite his PCRA hearing claim of having been prevented from testifying in 1984, [Petitioner] chose again to exercise his constitutional right against self-incrimination. (*See* N.T. Trial, 1/22/07 at 112).

On February 7, 2007, the court sentenced [Petitioner] to life imprisonment on the count of first degree murder, and a concurrent one to two years on the PIC count, with credit for time served.

*Commonwealth v. Rolan*, 964 A.2d 398, 401-404 (Pa.Super. 2008) (emphasis in original); Response

to Petition for Writ of Habeas Corpus[2], Exhibit B.

Upon Petitioner's appeal of his conviction, the trial court ordered him to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.App.P. 1925(b). The following issues were raised in response to the Order:

> 1. The Court erred in denying [petitioner's] motion to exclude the notes of testimony of Francisco Santiago, as admission of such testimony violated [petitioner's] state and federal constitutional rights to confront the witnesses against him, to effective assistance of counsel and to due process. (Def. Concise Statement 1)
>
> 2. The Court erred in not instructing the jury that the federal court of appeals had held that [petitioner's] original trial counsel was ineffective for not calling Daniel Vargas as a self defense witness at [petitioner's] original trial, after the prosecutor had repeatedly argued in his closing argument that the jury should discredit Vargas's testimony because he did not testify on [petitioner's] behalf until more than ten years after his original trial. (*Id.*)
>
> 3. The Court erred in denying [petitioner's] motion to preclude the Commonwealth from making any argument that [petitioner] had a different defense theory at his original trial than the self-defense theory that he put forth at his re-trial, as the making of such argument violated [petitioner's] state and federal constitutional rights to not testify on his own behalf, to effective assistance of counsel and to due process. (*Id.*)
>
> 4. The Court erred in admitting into evidence a tape of an anonymous 911 call over [petitioner's] objections that the call was inadmissible hearsay, that its admission would violate [petitioner's] state and federal constitutional rights to confront the witnesses against him, and that its probative value was outweighed by its prejudicial effect. (*Id.*)
>
> 5. The Court erred in denying [petitioner's] motion to preclude the Commonwealth from introducing any evidence or making any argument regarding [petitioner's] alleged robbing of the victim, as the introduction of such evidence or making any argument regarding [petitioner's] alleged robbing of the victim, as the introduction of

---

[2]Hereinafter "Response".

such evidence and the making of such argument violated [petitioner's] state and federal constitutional rights against double jeopardy, given that [petitioner] had been acquitted of this charge in his previous trial. (*Id.* at 2)

6. [Petitioner's] conviction should be vacated because his state and federal constitutional rights not to testify, to effective assistance of counsel, and to due process of law were violated when the prosecutor commented extensively during his closing argument on [petitioner's] failure to raise a self-defense claim at his original trial, when the absence of such claim at [petitioner's] original trial was based on his counsel's ineffectiveness (as found by the federal court of appeals) and his not testifying on his own behalf. (*Id.* at 2)

7. [Petitioner's] conviction should be vacated because the evidence presented at trial was insufficient to support the jury's verdict of first-degree murder. (*Id.* at 2)

8. [Petitioner's] conviction should be vacated because the prosecutor committed numerous acts of misconduct in violation of [petitioner's] state and federal constitutional rights to due process and a fair trial, including:

a. discussing highly prejudicial, inadmissible evidence with members of the media, both before and after the Court had instructed counsel not to speak to the media;

b. ignoring rulings of the Court regarding the admission of evidence and attempting to introduce such evidence through improper questioning and by instructing witnesses to testify about matters that the Court had held inadmissible;

c. coaching prosecution witnesses on what they should testify about and what they should say while testifying at trial;

d. contacting and coaching defense witnesses prior to their testifying at trial, and preparing a key defense witness to testify that his prior testimony at [petitioner's] original trial was erroneous and coaching that witness on how to testify at trial;

e. refusing to reveal the whereabouts of a defense witness during trial so that he was not available to meet with defense counsel prior to testifying;

f. talking to a witness during a break in the proceedings while that witness was being cross-examined;

g. grossly and repeatedly misrepresenting evidence that was presented at trial during his closing argument;

h. personalizing the case during closing arguments by talking

about his own family; and

       I. repeatedly referring in his closing argument to the lack of a self-defense case by [petitioner] at his original trial, despite the fact that [petitioner] did not testify on his own behalf at that trial and despite a prior finding by the federal court of appeals that the lack of a self-defense case was due to original counsel's ineffectiveness. (*Id.* at 2)

9. The Court erred in refusing to allow voir dire of the jury venire regarding potential jurors' views of self-defense, as requested by [petitioner]. (*Id.* at 2)

10. The Court erred in granting the Commonwealth's motion to require [petitioner] to call the prosecutor from [petitioner's] original trial as a witness in order to admit into evidence the prosecutor's on-the-record admissions from the original trial. (*Id.* at 3)

11. The Court erred in denying [petitioner's] motion to admit the May 13, 1983 Investigation Interview Records that contained the statements of police officers Ismael Cruz and Charles McGlade regarding their actions and observations regarding Francisco Santiago following the shooting of his brother Paulino Santiago, as these Investigation Interview Records were admissible as business records, regardless whether officers Cruz and Mcglade testified at trial. (*Id.* at 3)

12. The Court erred in not permitting defense counsel to cross-examine former detective Francis Miller regarding information the prosecutor did not send to him, after it was revealed that the prosecutor had sent him selected documents from the police record to guide his trial testimony. (*Id.* at 3)

13. The Court erred in ruling that defense counsel would not be permitted to question potential witness (and former detective) Joseph Guarnere about the information he obtained after questioning self-defense witness Robert Aponte in order to establish the effect of that information on the police investigation. (*Id.* at 3)

14. The Court erred in refusing [petitioner's] request that the Court provide exhibits to the jury that directly contradicted misrepresentations about those exhibits made by the prosecutor in his closing argument. (*Id.* at 3)

15. [Petitioner's] conviction should be vacated because his state and federal constitutional rights to a fair trial were violated by the cumulative effect of the Court's erroneous rulings and the other errors identified by the [petitioner]. (*Id.* at 3)

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 5-7 (C.C.P. Philadelphia County, May 31, 2007); Addendum to Brief in Support of Petition for Writ of Habeas Corpus[3], B.

The Superior Court of Pennsylvania addressed the following issues on direct appeal:

> [Petitioner] raises six questions, which we summarize here. First, he challenges the admission into evidence of the prior testimony of the victim's deceased brother, Francisco Santiago, claiming he was deprived of his constitutional rights to confront the witness and due process by defense counsel's "constitutionally ineffective" cross-examination. His second, third and fourth claims allege prosecutorial misconduct during closing argument for commenting on the absence of a defense witness, Vargas, from the prior trial, commenting on his failure to assert a claim of self-defense at the first trial, and for comments about the evidence. Fifth, he asserts the admission of a 911 tape from an unidentified caller again deprived him of the right of confrontation. Finally, he claims the admission of evidence that he attempted to take money from the victim violated his constitutional right to protection against double jeopardy, because he had been acquitted of robbery at the first trial.

*Commonwealth v. Rolan*, 964 A.2d at 404 (Pa. Super. 2008); Response, Exhibit B. On October 8, 2008[4], the Pennsylvania Superior Court affirmed Mr. Rolan's judgment of sentence. Petitioner did not seek further review by the Supreme Court of Pennsylvania, and his conviction became final on November 7, 2008. Further, Mr. Rolan did not seek state collateral review under the Pennsylvania Post Conviction Relief Act (PCRA).[5]

---

[3]Hereinafter "Addendum".

[4]See Petition for Writ of Habeas Corpus (hereinafter "Petition") at 5; Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254 (hereinafter "Petitioner's Memorandum") at 33, n. 8.

[5]42 Pa.C.S.A. §9541, *et seq.*

On November 13, 2008, Mr. Rolan filed the instant habeas petition. He raises the following claims as a basis for granting habeas relief:

> A. Ground one: Violation of petitioner's rights to effective assistance of counsel and due process.
>
> B. Ground two: Violation of petitioner's rights to effective assistance of counsel, due process, and remain silent.
>
> C. Ground three: Violation of petitioner's rights to confront the witnesses against him, effective assistance of counsel, and due process.
>
> D. Ground four: Violation of petitioner's right to due process.
>
> E. Ground five: Violation of petitioner's right to confront the witnesses against him.
>
> F. Ground six: Violation of petitioner's right not to be placed in jeopardy twice for the same offense.

Petition at 10-12. The Commonwealth denies that Mr. Rolan is entitled to federal habeas corpus relief because his claims are procedurally defaulted and/or meritless. *See* Response at 11. A Hearing was held on August 25, 2009.

## II. DISCUSSION

### A. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act)[6], signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions. One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the

---

[6]Pub. L. No. 140-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C. §2244(d)(1).[7]

In the instant case, the Superior Court of Pennsylvania affirmed Mr. Rolan's conviction on October 8, 2008. His time for seeking *allocatur* in the Pennsylvania Supreme Court expired on November 7, 2008. *See* Pa.R.App.P. 1113(a) (petition for allowance of appeal shall be filed within thirty (30) days from the entry of the order of the Superior Court sought to be reviewed). Consequently, his conviction became final on that date.[8] The within petition for writ of habeas corpus was filed on November 13, 2008.

The Commonwealth does not dispute, and I independently find, that Mr. Rolan's habeas petition is timely.

## B. **Exhaustion and Procedural Default**

The exhaustion rule, codified in 28 U.S.C. §2254(b)[9], provides that the habeas petitioner

---

[7]While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitations period to run from four (4) other points of time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence". 28 U.S.C. §2244(d)(1)(A)-(D).

[8]There is nothing in the record that would call for the use of one of the other start dates provided in 28 U.S.C. §2244(d)(1).

[9]The exhaustion requirements of 28 U.S.C. §2254 provide:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that:
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B)(I) there is an absence of available State corrective process or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

must have "exhausted the remedies available in the courts of the State" for all constitutional claims before a federal court shall have habeas corpus jurisdiction. There are rare circumstances that circumvent this requirement, none of which apply to the case at hand. To exhaust all remedies for a claim under 28 U.S.C. §2254, the habeas petitioner must give the state courts a full and fair opportunity to resolve all federal constitutional claims. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order for Mr. Rolan to give each habeas claim a full and fair opportunity for resolution, he must have presented both the factual and legal substance in the state courts through the highest tribunal, the Pennsylvania Superior Court.[10] The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of the state judicial proceedings. *See Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille*, 109 S.Ct. at 1059 (1989). The burden is on the habeas petitioner to establish that he has fairly presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993)), ("[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and the

---

courts of the State.

    (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

© An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[10]Seeking *allocatur* by the Pennsylvania Supreme Court is not part of the standard appeals process. Pennsylvania Supreme Court *Order No. 218* (May, 2000); *see also Mattis v. Vaughn*, 128 F.Supp.2d 249, 261 (E.D.Pa. 2001); *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

12

same method of legal analysis must be available in the state court as will be employed in the federal court.")

An unexhausted claim becomes procedurally defaulted when the petitioner has no additional state remedies available to pursue the issue. *See Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001) (when a claim has not been fairly presented to the state courts, but further state-court review is clearly foreclosed under state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default), *cert. denied,* 122 S.Ct. 1364 (2002).

Procedural default also occurs when an issue is properly asserted in the state system but is not addressed on the merits because of an independent and adequate state procedural rule. *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (1996) and *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("If the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.")

A procedural default may be excused if the habeas petitioner can demonstrate "cause" for the default and "prejudice attributable thereto" or demonstrate that the failure to consider his habeas claim will result in a "fundamental miscarriage of justice". *Wenger*, 266 F.3d at 224 (3d Cir. 2001). *See also McCandless*, 172 F.3d at 260 (3d Cir. 1999).

**C. <u>Standard of Review</u>**

Because Mr. Rolan's habeas petition was filed after the effective date of the AEDPA, the amended habeas standards apply herein.

AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State

13

court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d) (Supp. 1998).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of deference which AEDPA requires a federal habeas court to accord a state court's construction of federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 120 S.Ct. 73 (1999). The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two-step inquiry is warranted. The majority agreed:

> (1) The proper initial inquiry for the habeas court is whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only when the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court".
>
> (2) In the absence of such a showing, the habeas court must then ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent. This inquiry is an objective one, namely, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified.

*Matteo*, 171 F.3d at 891 (3d Cir. 1999).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 120 S.Ct, 1495, 529 U.S. 362 (2000). According to the *Williams* majority:

> We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court

judgment, a federal court is firmly convinced that a federal constitutional right has been violated. [. . .] In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state-court's judgment, a federal court is convinced that a prisoner's custody-or, as in this case, his sentence of death-violated the constitution, that independent judgment should prevail.

*Id.* at 1511.

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.,* 295 F.3d 361, 368 (3d Cir. 2002).

**D. <u>Analysis</u>**

1. <u>Violation of Petitioner's Rights to Effective Assistance of Counsel and Due Process</u>

Petitioner claims that the prosecutor argued to the jury, over his objection, that the jury should not credit the testimony of the key defense witness because he was absent from Petitioner's original trial in 1984. Mr. Rolan's original trial counsel had been found constitutionally ineffective by this Court and the Third Circuit for failure to investigate and call this witness at the 1984 trial. The trial court at the retrial refused to inform the jury of this fact to cure the prosecutor's statements regarding the witness's absence. Petition at 10.

Initially, this allegation of a denial of due process flows from the prosecutor's allegedly improper closing argument to the jury. The prosecutor's offending comments concerned the absence

of defense witness Daniel Vargas from Mr. Rolan's original trial.[11]

As the trial court explained in its opinion:

> During closing, defense counsel, relying on Daniel's testimony, stated that the [petitioner] killed Paulino in self-defense. (*See* N.T. 1/23/07 22) In response, the Commonwealth made the following comments in reference to the [petitioner]:

> > Self defense? What does he do? Does he contact the police? Does he call them on the phone? Does he surrender himself? Does he get a lawyer? No. He runs and hides. Where was the self defense on the

---

[11]The prosecutor argued in closing,

> Where was the self defense on the night of the murder from Danny Vargas, their witness? Where was it? By his own admission, he did nothing. Where was the self defense in 1984 when these proceedings were going on and the witnesses were being called to testify? Danny Vargas in 1984, characterized as an alibi witness, didn't want to cooperate, didn't want to give a statement, didn't want to testify.

> Then thirteen years later, thirteen years later, – can you imagine this? – in 1996, they parachute him in out of nowhere to say, oh, this was self defense, I saw Paulino Santiago with a knife. The very first time we hear any mention of the victim having anything, let alone a knife, folks, is thirteen years later, and that's a fact.
> . . . . .
> So to make out their self defense claim, they call Danny Vargas. That's all there is to make out self defense in this case. Danny Vargas. And the only thing that was missing from Danny Vargas's testimony thirteen years after the crime were four little words: Once upon a time. Once upon a time. Because if ever there was a fairy tale being spun in a court of law by a witness, it was spun in 1996 by Danny Vargas. Thirteen years later it was fairy tale time.

> Vargas is their whole case for self defense, their whole case. He's it. And it there's a reasonable doubt about anything in this case, it's got to be the testimony of Danny Vargas.

> Start with this. Danny Vargas doesn't come forward for over thirteen years, doesn't tell the police at the scene of the crime that he's a witness despite the fact that he was there when they get there and they're looking for witnesses. Gives no explanation for why he didn't step forward. Didn't even step forward later that night.

N.T. 1/23/07, 91-93; Appendix in Support of Petition for Writ of Habeas Corpus (hereinafter "Appendix"), Volume 4 at 1598a-1600a.

night of the murder from Danny Vargas, their witness?  Where was it?  By his own defense in 1984 when these proceedings were going on and the witnesses were being called to testify?  Danny Vargas in 1984, characterized as an alibi witness, didn't want to cooperate, didn't want to give a statement, didn't want to testify.   Then thirteen years later, thirteen years later, - can you imagine this? - in 1996, they parachute him in out of nowhere to say, oh, this was self defense.  (N.T. 1/23/07 91-92)

Comments that are "based on the evidence or derived from proper inferences" will not be deemed inappropriate.  *Cox*, 863 A.2d at 547.  The statements made by the Commonwealth comment on Daniel's unwillingness to speak with police officers and give a statement back in 1984.  There was evidence that Daniel did not tell anyone what he observed immediately following the 1983 shooting and subsequently refused to speak about the incident when he was interviewed by the police in 1984.  (See N.T. 1/22/07 59-84)  The comment did highlight that Daniel did not testify at the original trial.  Daniel's unwillingness to reveal what he knew about Paulino's death at the time is a factor to be considered by the jury in order to evaluate his credibility.   These statements were permissible in response to defense counsel's argument that Daniel's account was credible and established that the [petitioner] killed Paulino in self-defense.  Accordingly, this claim is without merit.

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 13-14 (C.C.P.

Philadelphia County, May 31, 2007); Addendum, B.

The Superior Court of Pennsylvania, further opined in regard to this issue:

[Petitioner's] second claim challenges the Commonwealth's comments during closing argument on the absence of the key defense witness, Vargas, from his prior trial.  The Commonwealth argues that this claim is not presented in his statement pursuant to Pa.R.A.P. 1925)b) and is, accordingly, waived.  We agree.

Where the trial court orders an Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925, any issue not contained in that statement is waived on appeal.  *Commonwealth v. Castillo*, [] 888 A.2d 775; *Commonwealth v. Lord*,

[] 719 A.2d 306, 309 ([Pa] 1998)." *Commonwealth v. Robinson*, 931 A.2d 15, 25-26 (Pa. Super. 2007).

As noted by the Commonwealth, even though paragraph 2 of [Petitioner's] Rule 1925(b) statement mentions Vargas and his non-appearance, he did not raise the issue of the alleged prosecutorial misconduct. When a "court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000) *affirmed*, 571 Pa. 441, 812 A.2d 631 (2002) (citation, brackets and quotation marks omitted).

Moreover, [Petitioner's] claim would fail on the merits.

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion.

> In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.

*Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007) (citations and quotation marks omitted).

> Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

> Commonwealth v. May, 587 Pa. 184, 898 A.2d 559, 567 (2006), *cert. denied*, 549 U.S. 1022, 127 S.Ct. 557, 166 L.Ed.2d 414 (2006) (citations and internal quotation marks omitted).

> Instantly, the Commonwealth was unarguably entitled to comment on the credibility of Vargas' belated support of the self-defense theory and his demonstrable failure to cooperate when first requested. For all the multiplicity of citations to case law for general principles, [Petitioner] offers no specific authority supporting his claim that the prosecutor exceeded the reasonable latitude afforded the Commonwealth in fairly presenting a case to the jury and the well settled limits of fair response *See Harris, May, supra.* [Petitioner's] argument would not merit relief.

Commonwealth v. Rolan, 964 A.2d at 409-410 (Pa. Super. 2008); Response, Exhibit B.

In first addressing Mr. Rolan's claim of violation of due process due to the prosecutor's closing argument to the jury, the Pennsylvania Superior Court found the claim to be waived because it was not presented in Mr. Rolan's Rule 1925(b) statement. In the alternative, the Superior Court found that the issue of prosecutorial misconduct was not meritorious. As noted by the Court, "[petitioner] offers no specific authority supporting his claim that the prosecutor exceeded the reasonable latitude afforded the Commonwealth in fairly presenting a case to the jury and the well settled limits of fair response". *Id.*

As the state court found the claim waived, it is subject to procedural default herein, due to this independent and adequate state procedural rule concerning waiver. Federal habeas corpus relief would be inappropriate.

In the alternative, if this claim were not procedurally defaulted, and we were to address this issue on the merits, as the Pennsylvania Superior Court did in its alternative finding, we would adopt the analysis of the issue made by the Superior Court as our own and deny the claim on the merits.

The relevant question upon federal habeas review of prosecutorial comments at trial is

whether or not the comments of the prosecutor "so infected the trial with unfairness as to make the conviction a denial of due process". *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The touchstone of the due process analysis is the fairness of the trial, not the culpability of the prosecutor. *See Smith v. Phillips*, 455 U.S. 209, 219 (1982). The prosecutor's comments in closing were not improper and did not deprive Mr. Rolan of fundamental fairness. Mr. Rolan is not entitled to habeas corpus relief for this due process claim.[12]

Mr. Rolan further points out that the trial court at his retrial did not inform the jury that Petitioner's original trial counsel had been found ineffective for failing to investigate and call Mr. Vargas at his 1984 trial, and he feels that this prejudiced the jury against him. This issue was addressed in the trial court opinion, but the Superior Court makes no mention of it in its opinion[13]. However, as the trial court opined:

---

[12] In his argument in support of this claim, Mr. Rolan asserts that the deferential standards of AEDPA ought not to be applied to this issue, citing *Thomas v. Horn*, 570 F.3d 105 (3d Cir. 2009), or, in the alternative, the state court's holding is contrary to, or an unreasonable application of, clearly established federal law, citing *Collins v. Loisel*, 262 U.S. 426, 430 (1923) as authority for the proposition that a habeas judgment is *res judicata* "of the issues of law and fact necessarily involved in that result"

Whether this claim is reviewed *de novo* or with the AEDPA deferential standard, federal habeas relief is not warranted for this due process claim. Additionally, as Justice Brennan observed, "federal and state courts have given varying scope to [*Collins*]. Thus, considerable confusion . . . has developed over the appropriate scope of the principle of *res judicata* in cases in which the prisoner obtains habeas relief, and over the issues to which it ought properly to ap0ly if it is applicable". *Chambers v. Cox*, 400 U.S. 870, 872 (1970). The Superior Court's decision is not contrary to or an unreasonable application of clearly established federal law.

[13] The Pennsylvania Superior Court does mention, however, that:

> [Petitioner's] statement of questions involved violates Pa.R.A.P. 2116 by failing to state the questions in "the briefest and most general terms." Prolix and argumentative, the questions run 26 lines, substantially exceeding the suggested 15 lines.

*Commonwealth v. Rolan*, 964 A.2d 398, 404 n.7 (Pa. Super. 2008).

The [petitioner] asserts that this Court erred when it failed to inform the jury that the federal court of appeals held that the [petitioner's] counsel at his first trial was ineffective for failing to call Daniel as a self-defense witness following the Commonwealth's closing argument. Prior to trial, this Court ruled that the jury would not be informed of the outcome of the [petitioner's] first trial, his death sentence, retrial of the penalty phase, or rulings made during the proceedings on the [petitioner's] Petition for Writ of Habeas Corpus in the federal courts. (*See* N.T. 1/12/07 173-174) References to prior proceedings could not be precluded because the prior testimony of several unavailable Commonwealth and defense witnesses had to be read to the jury. However, informing the jury of the outcome of earlier decisions was unnecessary and would only serve to prejudice the jury as it considered the evidence at this trial.

The U.S. District Court for the Eastern District of Pennsylvania considered the [petitioner's] Petition for Writ of Habeas Corpus and determined that trial counsel was ineffective for failing to investigate Daniel as a possible self-defense witness. The Third Circuit Court of Appeals affirmed that decision. The [petitioner] received a new trial and the testimony of Daniel as provided in 1996 at a hearing on the [petitioner's] first Post Conviction Relief Act petition was read to the jury at the re-trial. Daniel was unavailable to testify because he died in 2006. The jury had to determine the [petitioner's] guilt or innocence based on the evidence presented at this trial. The reasons for the federal district court's decision that the [petitioner] receive a new trial were not necessary for the jury's determination of guilt or innocence.

Further, the jury was given a cautionary instruction about why Daniel's testimony was not presented at the earlier 1984 proceeding. Following the Commonwealth's closing, defense counsel objected to the Commonwealth's statements and requested that this Court give a curative instruction because the statement was a comment on the [petitioner's] failure to testify. (N.T. 1/23/07 100-103, 168-199) After hearing argument from both parties, this Court determined that although the Commonwealth's statements were a fair response to defense counsel's arguments, they may have given the jury a false impression that Daniel was never available to testify in 1984. (*Id.* at 193-199) The jury was subsequently instructed as follows:

> Ladies and gentlemen, Daniel Vargas was known to
> both the Commonwealth and the defense at the time

of the prior proceeding in 1984. However, prior
defense counsel failed to call Daniel Vargas at the
earlier proceeding in 1984. (*Id.* at 219).

*See Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1216
(2006) (cautionary instructions are sufficient to cure any prejudice;
the jury is assumed to have followed them). Accordingly, this claim
is without merit.

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 14-15 (C.C.P.

Philadelphia County, May 31, 2007). Petitioner's counsel did not object to the instruction given, nor

did he request any further relief.

Had the Superior Court of Pennsylvania decided to address this issue further, it would have

found it waived pursuant to Pennsylvania law. *See Commonwealth v. Birdseye*, 637 A.2d 1036,

1043 (Pa. Super. 1994); *Commonwealth v. Turner*, 568 A.2d 622, 626 (Pa. Super. 1989). As such,

the claim would be subject to procedural default in this Court and not properly before me. Even

were this issue appropriately here, it would be worthy of note that the trial court gave the requested

cautionary instruction, and the jury is presumed to follow the directions of the trial court. Clearly,

this instruction did not result in a violation of Mr. Rolan's due process rights. This claim provides

no basis for habeas relief.

Mr. Rolan also asserts a violation of his right to effective assistance of counsel in this claim.

The counsel to whom he refers is his original trial counsel. The record reveals that the

ineffectiveness of Petitioner's original counsel was raised, addressed, and remedied in the federal

habeas proceedings following his 1984 trial. Mr. Rolan received relief in the form of a new trial;

the failure of original trial counsel to effectively represent him has been remedied. There is no need

for the issue to be revisited now.

Petitioner's entire first claim does not warrant federal habeas corpus review or relief.

2. <u>Violation of Petitioner's Rights to Effective Assistance of Counsel, Due Process, and Remain Silent</u>

In his second claim, Mr. Rolan states that the prosecutor emphasized to the jury, over Petitioner's objection, that Mr. Rolan did not raise a self-defense case or make any contention on his own behalf at his original 1984 trial or before that time. Petitioner's original trial counsel had been found constitutionally ineffective by this Court and the Third Circuit for failure to mount a self-defense case, despite being urged to do so by Petitioner. *See* Petition at 10.

Mr. Rolan once again finds fault with the prosecutor's closing argument, stating that the prosecutor commented that Petitioner failed to assert a claim of self-defense at his first trial; moreover, he did not testify on his own behalf at that time. As noted previously, where there is an allegation of prosecutorial misconduct, the issue is whether the prosecutor's acts so infected the trial as to make the resulting conviction a denial of due process. *See Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly*, 416 U.S. at 642 (1974). The Due Process Clause is not a code of ethics for prosecutors. Rather, the concern is with the manner in which persons are deprived of their liberty. *See Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus, the touchstone of due process analysis is the fairness of the trial, not the culpability of the prosecutor. *See Smith*, 455 U.S. at 219 (1982). In evaluating this alleged misconduct, the court must examine the prosecutor's conduct in the context of the trial as a whole. *See Greer*, 483 U.S. at 766; *Darden*, 477 U.S. at 179 (1986).

A prosecutor may not comment adversely upon a defendant's failure to testify at trial. *See Griffin v. California*, 380 U.S. 609 (1965). A prosecutor may, however, impeach a defendant by commenting on his pre-arrest silence and may comment or cross-examine on post-arrest silence if

*Miranda* warnings have not been given. *See Jenkins v. Anderson*, 447 U.S. 231, 240 (1980); *Fletcher v. Weir*, 455 U.S. 603, 606-607 (1982). Comments on silence allegedly in violation of *Griffin* are judged by whether the state court resolution was a reasonable application of *Griffin*. *See Yancey v. Gilmore*, 113 F.3d 104, 106-107 (7th Cir. 1997).

The prosecutor's challenged comments are as follows:

> MR. GILSON: . . . They claim self defense. Twenty-four years later they claim self defense. Where was the self defense in May of 1983? Where was the self defense for the five months that that man was a fugitive from the law? Where was the self defense when he went to Brooklyn and hid out until the police caught him? Didn't surrender himself. Didn't get a lawyer. Knew the cops were looking for him. They had a warrant for him that night. They go to all the houses where his family lives, everybody that he knew that they thought would know where he was, tells every single one of those people we have a warrant for your arrest for the murder of Paulino Santiago.
>
> Self defense? What does he do? Does he contact the police? Does he call them on the phone? Does he surrender himself? Does he get a lawyer? No. He runs and he hides.
>
> Where was the self defense on the night of the murder from Danny Vargas, their witness? Where was it? By his own admission, he did nothing. Where was the self defense in 1984 when these proceedings were going on and the witnesses were being called to testify?

N.T. 1/23/07 at 90-91; Appendix, Volume 4 at1597a-1598a.

The Pennsylvania Superior Court opined concerning this issue:

> [Petitioner's] third claim challenges the Commonwealth's comments during closing argument about his failure to assert his self defense claim at or before his original trial. We review this claim of prosecutorial misconduct also for abuse of discretion. *See Harris, supra.* "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Id.*
>
> Here, once again, [Petitioner] would have us treat the federal

courts' decisions as granting him not only a new trial but also virtual immunity from any challenge to the credibility of his self-defense claim. We decline for the reasons already noted. [Petitioner's] argument conflates the constitutional right against self-incrimination with the right and duty of the Commonwealth to comment on the credibility of evidence presented in support of a self-defense claim, and flight. "While evidence of flight alone is not sufficient to convict one of a crime, such evidence is relevant and admissible to establish an inference of guilt." *Commonwealth v. Williams*, 615 A.2d 716, 721 (Pa. 1992) (citations omitted). The Commonwealth was entitled to raise the question of credibility and to comment on his five month flight to New York in its closing argument. [Petitioner's] third claim fails to merit relief.

*Commonwealth v. Rolan*, 964 A.2d at 410 (Pa. Super. 2008); Response, Exhibit B. The Superior Court of Pennsylvania reasonably concluded that the prosecutor's comments were not improper. Its rejection of Mr. Rolan's claim of prosecutorial misconduct is neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. This claim does not warrant federal habeas relief.

Petitioner's issue concerning ineffective assistance of counsel which he raised in this claim will not be addressed for the reasons stated in his first claim.

3. Violation of Petitioner's Rights to Confront the Witnesses against Him, Effective Assistance of Counsel, and Due Process

Mr. Rolan asserts in his third claim that the trial court admitted, over petitioner's objection, the prior testimony of the key prosecution witness from the original preliminary hearing and trial in 1984, despite original trial counsel's failure to adequately cross-examine that witness about inconsistencies in his testimony, the assurances he had received from the prosecution in exchange for his testimony, and other bases to undermine his credibility.

The Confrontation Clause guarantees an opportunity for effective cross-examination, but "not

cross-examination that is effective in whatever way, and to whatever extent, the defense might wish". *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The key prosecution witness to whom Petitioner refers is Francisco Santiago, the victim's deceased brother. Mr. Santiago died in 1998, and was not available to testify at Mr. Rolan's retrial in 2007. The Philadelphia County Court of Common Pleas explained:

> Both parties represented that the Honorable Carolyn Temin, a judge of the Court of Common Pleas, determined that Francisco's trial testimony was admissible before this matter was transferred to this Court. (N.T. 1/12/07 101-106) Inasmuch as these evidentiary rulings were made by a judge of equal jurisdiction, unless one of the factors previously mentioned above is present, this Court cannot revisit such rulings. The [petitioner] has not asserted any intervening change in controlling law or substantial change in facts or evidence to warrant that Judge Temin's rulings be revisited. *See Starr*, 664 A.2d at 1331-1334. Nor were the prior rulings so clearly erroneous as to create a manifest injustice. *Id.*
>
> Subsequently, this Court ruled on the admissibility of Francisco's preliminary hearing testimony. Pa.R.E. 804(b)(1) provides that the former testimony of an unavailable witness is admissible so long as the party it is being admitted against had an "adequate opportunity and similar motive to develop the testimony by direct, cross, and redirect examination." In criminal cases, 42 Pa.C.S. §5917 further provides:
>
>> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served

with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. 42 Pa.C.S. §5917.

Francisco, now deceased, testified at the [petitioner's] preliminary hearing in this matter and was subjected to extensive cross-examination by defense counsel. (*See* Exhibit C-21) Consequently, Francisco's preliminary hearing testimony was admissible. *See Commonwealth v. McCrae*, 574 Pa. 594, 832 A.2d 1026, 1035 (2003).

Further, the [petitioner] is not entitled to relief because Francisco's statement was admissible as a prior consistent statement. Prior consistent statements are admissible "to rebut an express or implied charge of fabrication, bias, improper influence or motive or faulty memory . . . [so long as] the statement was made before that which has been charged existed or arose." Pa.R.E. 613 (c)(1). The impeachment of a witness need not "explicitly indicate recent fabrication; rather, it is only necessary that the questioning suggest that the testimony is a recent fabrication." *Commonwealth v. Counterman*, 533 Pa. 370, 719 A.2d 284, 301-302 (1998) (*citing Commonwealth v. Bailey*, 322 Pa. Super. 249, 469 A.2d 604, 613 (1986).

A prior consistent statement admitted under Pa.R.E. 613© is rebuttal evidence. *Id.* However, admission of prior consistent statements before a witness is impeached is at the discretion of the trial court. *See Counterman*, 719 A.2d at 301 (*citing Commonwealth v. Jones*, 539 Pa. 222, 651 A.2d 1101, 1106 (1994); *Commonwealth v. Smith*, 515 Pa. 15, 540 A.2d 246, 257-258 (1988) (upholding the introduction of prior consistent statements before any impeachment because the defendant's "entire line of defense centered around impeaching the credibility of . . . co-defendants [who testified against him.]").

The Commonwealth presented Francisco's preliminary hearing testimony from February 22, 1984, and prior trial testimony from May 16, 1984 in its case in chief. (N.T. 1/18/07 231-299) The [petitioner] subsequently called the prosecutor at the [petitioner's] first trial, former assistant District Attorney John DiDonato. During

a sidebar conference, former Assistant District Attorney DiDonato advised the court that the Commonwealth did not intend to use Francisco's testimony against him; the Commonwealth was not going to charge Francisco with any drug or other offenses as a result of the events on May 13, 1983. (N.T. 1/19/07 165-209) On rebuttal, the Commonwealth called the prosecutor at the [petitioner's] preliminary hearing, Assistant District Attorney George Shotzbarger, to testify that he made no deals in exchange for Francisco's testimony at the preliminary hearing. (N.T. 1/22/07 184-201)

From the outset of this trial, it was clear that defense counsel planned to introduce evidence to show that Francisco lied at the [petitioner's] first trial because the Commonwealth had granted him concessions in exchange for his testimony. Francisco's preliminary hearing testimony, which was given absent assurances by the Commonwealth and more than two months before the [petitioner's] first trial, was admissible as a prior consistent statement to rebut the suggestion that he lied at the [petitioner's] first trial. *See* Pa.R.E. 613(c)(1). The fact that the Commonwealth presented Francisco's preliminary hearing testimony in its case in chief is of no moment; this Court exercised its discretion to admit Francisco's consistent statement before he was impeached. *See Counterman*, 719 A.2d at 301. Accordingly, this claim lacks merit.

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 9-12 (C.C.P.

Philadelphia County, May 31, 2007); Addendum at B.

Upon appeal, the Superior Court of Pennsylvania agreed:

[Petitioner's] first claim, and the over-arching theme of his appeal, is that he has yet to receive a "fair trial" ([Petitioner's] Reply Brief at 1), because he was "shackled" by the testimony of the deceased witness, Francisco Santiago, read into the record from the first trial. Specifically, he alleges that ineffective cross-examination by his late trial counsel failed to undermine Francisco's testimony, particularly by not challenging him with a competing theory of self-defense. The error of the trial court in admitting this evidence, he argues, "carried over" the defects of the first trial into the re-trial, depriving him of his constitutional rights to due process and to confront the witnesses against him by "tainted testimony". (*Id.* at 11). We disagree.

Initially, we note that in permitting the testimony of Francisco

Santiago, the trial court was following the pre-trial ruling of the Honorable Carolyn Engel Temin, thus observing the coordinate jurisdiction rule, an aspect of the sell-settled doctrine of the law of the case. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331-32 (Pa. 1995). Furthermore,

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record."

*Commonwealth v. Cooper*, 941 A.2d 655, 667 (Pa. 2007) (citations omitted).

> Pursuant to 42 Pa.C.S.A. §5917, the former testimony of a witness in a criminal proceeding who has since died is competent evidence admissible in a subsequent trial of the same criminal issue. *See also* Pa.R.E. 804.1. The Supreme Court has held, however, "that in order for a witness's prior testimony to be admissible pursuant to Section 5917, the defendant against whom the testimony is to be admitted at a subsequent proceeding must have been afforded *a full and fair opportunity to cross-examine the witness* at the first proceeding." *Commonwealth v. Chmiel* [] 738 A.2d 406, 417 ([Pa.] 1999), *cert. denied*, 528 U.S. 1131, [] (2000) (emphasis added).

*Commonwealth v. Strong*, 825 A.2d 658, 662 (Pa. Super. 2003), *appeal denied*, 847 A.2d 59 (Pa. 2004), *cert. denied*, 544 U.S. 927 (2005).

Departure from either the coordinate jurisdiction rule or the law of the case doctrine is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *See Starr, supra* at 1332.

Here, [Petitioner] does not argue that there has been any intervening change in the law or the facts. Rather he argues, albeit only implicitly, that manifest injustice occurred because Francisco Santiago's posthumous testimony was "tainted" by the putatively ineffective cross-examination at the first trial. This argument fails on several levels.

First and foremost, the taint argument fails because, as aptly noted by the Commonwealth, [Petitioner] had the opportunity to present, and did present, a claim of self-defense on re-trial. (*See* Commonwealth's Brief at 15). Therefore, any perceived defect in the defense mounted by deceased trial counsel, that is, the failure to develop and present a self-defense theory of the case, has been remedied.

> Where an accused raises the defense of self-defense under Section 505 of the Pennsylvania Crimes code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. The Commonwealth sustains this burden if "it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005) (some citations omitted).

> The question of weight of the evidence is one reserved exclusively for the trier of fact who is free to believe all, part, or none of the evidence and free to determine the credibility of witnesses. We, as an appellate court, may not substitute our judgment for that of the trier of fact and may reverse the findings of the trier of fact only where the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Solano*, 906 A.2d 1180, 1186 (Pa. 2006), *cert.*

*denied*, 127 S.Ct. 2247 (2007).

Here, the second jury heard [Petitioner's] assertion of self-defense. It is beyond dispute that the jury as trier of fact was free to believe all, part or none of the evidence. *See Solano, supra.* Nevertheless, [Petitioner] argues that he received a defective re-trial, despite presenting his claim of self-defense, because his trial included cross-examination testimony which he asserts is ineffective because federal courts concluded that trial counsel was ineffective for not advancing a claim of self-defense. This is circular logic and is, in any event, belied by the record. As the Commonwealth appropriately observes, "no court among the many that have reviewed the record has ever found any ineffectiveness in prior counsel's cross-examination of Santiago." Commonwealth's Brief, at 13.

Secondly, although placing the effective assistance of deceased trial counsel directly at issue, [Petitioner] fails to set out the ineffectiveness analysis required by Pennsylvania law. "In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007) (citation omitted). To overcome the presumption of effectiveness, [Petitioner] must establish three factors: first that the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [Petitioner] was prejudiced. *See id.* "Counsel's assistance is *deemed constitutionally effective* once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Commonwealth v. Harvey*, 812 A.2d 1190, 1196 (Pa. 2002) (citations omitted) (emphasis added).

> Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. *See Strickland v. Washington*, 466 U.S. 688, 691 (1984). Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. *See id.* At 690-91[]. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based

upon the distorting effects of hindsight. *See id.* at 689 []. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. *See Commonwealth v. Peterkin*, 479 U.S. 1070 [] (1987). Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it. *See Commonwealth v. Howard*, [] 719 A.2d 233, 238 ([Pa.] 1998).

*Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000).

Here, having failed to address the three prongs of traditional effectiveness analysis, [Petitioner] fails to meet the burden of proving his ineffectiveness claim. "Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Harvey, supra*.

Moreover, [Petitioner's] claim that prior counsel's cross-examination of Francisco Santiago was "grossly inadequate" rests on two legally inadequate assumptions: first, the failure "to take advantage of significant opportunities for impeachment;" and second, the failure to develop a theory of self-defense and to challenge Francisco with it. (*See* [Petitioner's] Brief, at 33).

The assertion of significant opportunities for impeachment, other than the self-defense theory, rests on the incomplete disclosure of Francisco Santiago's agreement with the Commonwealth. Santiago testified that the Commonwealth had agreed to notify his corrections officer of his cooperation. Nonetheless, with the apparent acquiescence of the prosecutor, Santiago did not mention a promise of immunity from prosecution for drug or other charges arising out of the events of the night in question.

However, even the federal district court which granted the writ concluded that the ineffectiveness claim based on the failure to object to the prosecutor's failure to lay out the complete range of immunity assurances to Francisco, was "only incremental;" and did not affect the reliability of the original verdict. *Rolan v. Vaughn*, 2004 WL 2297407 at 5 n. 10. Furthermore, as already noted, our predecessor panel reviewed this claim and found no basis to conclude

[Petitioner] was prejudiced. (*See Commonwealth v. Rolan*, (No. 4581 Philadelphia 1997, Pa. Super. filed June 9, 1999) at 12-13. We agree, and under the law of the case doctrine decline to deviate from the conclusions reached by that panel on this issue. *See Starr, supra.*

Further, the claim that Francisco Santiago's testimony could have been impeached based on a fuller exploration of his agreement with the Commonwealth is baseless. His testimony at the preliminary hearing, before the agreement with the Commonwealth for immunity was finalized, was substantially identical to his testimony at trial. Likewise, even though he claimed to know nothing when first approached by the police at the crime scene, once he was removed to the police station he readily identified [Petitioner] as his brother's assailant.

The common sense inference is that Santiago's public defender negotiated an agreement preventing his prosecution for any possible complicity in the sale of marijuana that night. In his testimony, Santiago freely discussed the marijuana sales which sparked the argument that preceded [Petitioner's] shooting of his brother. In any event, nothing in the record supports the claim that Santiago's testimony was altered or compromised by any agreement with the prosecutor. The Commonwealth raised Santiago's criminal record and defense counsel confirmed on cross-examination that Santiago was a convicted thief.

The final argument for ineffective cross-examination rests on the supposed failure of counsel to challenge Francisco Santiago based on the theory of self-defense. This assertion is based in turn on the federal courts' findings of counsel's ineffectiveness for failure to develop a theory of self-defense by investigating the evidence provided by Vargas and Aponte.

"Absent a United States Supreme Court pronouncement, decisions of federal courts are not binding on state courts, even when a federal question is involved." *Commonwealth v. Lambert*, 765 A.2d 306, 315 n.4 (Pa. Super. 2000), *affirmed*, 769 A.2d 1205 (Pa. 2000); *see also Commonwealth v. Jones*, 951 A.2d 294, 301 (Pa. 2008) ("It is well settled that [the Pennsylvania Supreme] Court is not bound by decisions of federal courts inferior to the United States Supreme Court").

Here, while the retrial has rendered moot any challenge to the

writ of habeas corpus, we are constrained to observe that we are not bound by the federal courts' findings of fact supporting their decisions. To the contrary, both federal courts were required to defer to the fact findings of the Superior Court pursuant to section 2254(e)(1) of the Antiterrorism and Effective Death Penalty Act. Clearly, the previous panel of the Superior Court adjudicated [Petitioner's] ineffectiveness claims on the merits.

Moreover, since original trial counsel was deceased before his effectiveness was challenged, he could not defend his strategic decisions, let alone explain the client confidences which may have informed them. Therefore, the only practical basis for assessing effectiveness of counsel beyond the cold record were the self-serving assertions of [Petitioner], the belated and facially inconsistent testimony of Vargas, and the elliptical statement of Aponte. '[T]he reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. [] Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant." *Basemore*, *supra* (citations omitted).

We have already noted our predecessor panel's comments about the legal deficiencies of Aponte's unsworn statement as evidence. We further note that it is even unclear from Aponte's statement whether he is referring to an encounter with the victim, otherwise unmentioned, or to the meeting with the unnamed driver who used to date [Petitioner's] girl friend, and the cryptic reference to [Petitioner's] radio, which he had just been discussing. The federal courts' invocation of Aponte as a reliable source for a theory of self-defense, and a credible basis for assessing ineffectiveness, it unsupported by the record and speculative.

Consequently, the one remaining basis for the federal courts to conclude that counsel was ineffective for not developing a theory of self-defense is the total, and apparently uncritical, acceptance of Vargas' belated and facially contradictory testimony as credible, a re-weighing of the evidence, a dubious proposition based on the record, and the self-serving PCRA testimony of [Petitioner] himself. [Petitioner] offers no other witness or evidence to corroborate the federal courts' version of events. Question the credibility of Vargas and Aponte, and the legal house of cards which is the framework of [Petitioner's] "carry over" taint theory collapses.

In any event, on re-trial [Petitioner] did present his theory of

self-defense to a jury.  Even if, as our predecessor panel suggests, [Petitioner's] assertions and Vargas' affidavit were sufficient as an offer of proof, once he received a new trial it was again for the jury as fact-finder to assess credibility and to accept all, part or none of the evidence.  *See Solano, supra.*  Since [Petitioner] has failed to prove a "constitutionally ineffective" cross-examination, his general ineffective assistance of counsel claim fails, as do his due process claims.  *Washington, supra; Harvey, supra; Basemore, supra.*

Finally, [Petitioner's] claims fail on the merits.  Contrary to [Petitioner's] sweeping and hyperbolic rhetoric, defense counsel *did* engage in meaningful, effective cross-examination of Santiago.  He established that both Santiago brothers had been drinking heavily, that the abandoned house was without electricity and therefore dark, that the victim's girlfriend had recently left him for [Petitioner], and that despite Santiago's claim that [Petitioner] demanded money, he did not stop to take any cash from either brother.  Regarding the self-defense theory, counsel, like the prosecutor, did ask whether either brother had a weapon, and established that the witness was a convicted thief.  (*See* N.T. Trial 5/16/84, at 54-58, 62-64, 66-69, 71-73). [Petitioner's] claim of ineffective cross-examination does not merit relief.

[Petitioner] has failed to prove that prior counsel was ineffective.  Therefore, there was no taint carried over in his cross-examination of Francisco Santiago.  Consequently, there was no manifest injustice, and the trial court properly followed the principle of coordinate jurisdiction and the law of the case in admitting the challenged testimony.  *See Starr, supra; Cooper, supra; Strong; supra.* [Petitioner's] first claim fails.

*Commonwealth v. Rolan*, 964 A.2d at 404-409; Response, Exhibit B.

Neither the Superior Court's determination that the prior testimony of Francisco Santiago was properly admitted at trial, nor that Mr. Rolan's original trial counsel provided him with ineffective assistance[14], is contrary to, nor an unreasonable application of, United States Supreme Court precedent.  There is no basis for federal habeas relief in regard to this claim.

---

[14]In any event, as stated in Petitioner's first two claims, the issue of original trial counsel's ineffectiveness was addressed in the proceedings following Mr. Rolan's 1984 trial, and it was remedied with a new trial.

4. <u>Violation of Petitioner's Right to Due Process</u>

In his fourth claim, Mr. Rolan asserts that the prosecutor grossly misrepresented, over Petitioner's objection, key facts regarding the underlying shooting and various witnesses' credibility. He goes on to claim that the prosecutor also repeatedly attempted to introduce evidence that the trial court ruled inadmissible and, despite multiple such rulings, commented on the inadmissible evidence during his closing argument. Additionally, he claims that the prosecutor made other misstatements and improper comments during closing argument. *See* Petition at 11. "[T]he prosecutor misrepresented the evidence or made improper statements about inadmissible evidence regarding every significant aspect of the case: the testimony of Daniel Vargas[15]; the testimony of Edwin

---

[15]Mr. Gilson spoke of Daniel Vargas in the following manner in his closing argument:

> MR. GILSON: Vargas is their whole case for self defense, their whole case. He's it. And if there's a reasonable doubt about anything in this case, it's got to be the testimony of Danny Vargas.
>
> Start with this. Danny Vargas doesn't come forward for over thirteen years, doesn't tell the police at the scene of the crime that he's a witness despite the fact that he was there when they get there and they're looking for witnesses. Gives no explanation for why he didn't step forward. Didn't even step forward late that night.
> . . . . .
> So you got Danny Vargas, their witness. Not only doesn't tell the police about this but by his own admission in 1996 didn't even tell the [petitioner] that he supposedly saw Paulino running into the house with a knife. Didn't tell the [petitioner's] family and kept his mouth shut.
>
> Now, the [petitioner] was arrested in November of '84. We have these proceedings – I'm sorry. In November of '83. We have these proceedings in '84. Vargas knows they're going on because the DA detective goes out to interview him as a possible witness for the [petitioner]. And yet he doesn't come to court, doesn't testify, doesn't tell the [petitioner] or his family anything about seeing the victim with a knife. Their witness.
>
> When a DA detective goes out to talk to him in May of '84, to investigate him as a possible alibi witness, Danny Vargas, Detective Guarnere goes out to investigate him, you are being, we are questioning you concerning you being a possible alibi witness for, for the [petitioner] Florencio Rolan. Are you willing to give a statement to the District Attorney's Office about you being an alibi witness?

Rosado[16]; the 911 call[17]; the police investigation[18]; and the testimony of Francisco Santiago[19]."

He says no.  That's it.  No.  Not "no, I'm not an alibi witness, I'm a witness to self defense."  Not "no, I saw Paulino Santiago with a knife running into the house saying he was going to kill him."  Not "no, this is a case of self defense."  It's just no.  No.  I'm not cooperating.  I'm not giving you a statement.  I'm not testifying and I'm not coming to court.  Signed by Danny Vargas, their witness.
. . . . .
Next thing he testified to was that during this argument, for some completely unexplained reason, Francisco all of a sudden runs into the house and yells, "I'll be back."  Well, it's not in his statement.  It's just not in there.

In the statement what he says is, "I then saw Francisco Santiago, Florencio Rolan and Paulino Santiago enter the abandoned house."  In the statement, they all go in the house together.  All together.  When he testified, though, he switched it up.  He changed it, on the fly.  He's making stuff up.
. . . . .
Vargas testified that Paulino, after the [petitioner] now is in the house, Paulino comes running back from around the corner with this large kitchen knife, yells "I'm going to kill you" and then runs into the house.  Not in the affidavit.  Not here.  He's making it up on the witness stand.
. . . . .
Look, there's only three people in that house.  One of them runs out the back and he wasn't telling anybody anything that night.  The other one has been shot to death and he's not saying a thing.  And the other one is helping his brother outside and according to both Rosado and Vargas, he said nothing about what happened in that house.

N.T. 1/23/07 at 93, 96-98, 112, 116, 121; Addendum at 1600a, 1603a-1605a; 1619a, 1623a, 1628a.

[16]Mr. Rolan takes issue with the following statements concerning Edwin Rosado in the prosecutor's closing:

MR. GILSON: But later on, on his own, Rosado contacted the police and told them I have some information about this murder, you need to come get me and make it look like you're locking me up so nobody knows I'm snitching.  And later on that same night, within hours, early on the morning of the next day, he's down in Homicide giving his statement, telling the police, look, I'm not saying I saw the [petitioner] with a weapon when he went into that house and I certainly wasn't in that house to see what kind of weapon was used.  But I'll tell you this: Two days before the murder, I saw the [petitioner] on the corner of Seventeenth and Wallace with a twenty-two caliber rifle, so if you should find out that the murder weapon in this case is a twenty-two caliber rifle, that's his, I seen him with it.
. . . . .
. . . And then you take Rosado who puts that murder weapon in the [petitioner's] hands at, near or around the time of this murder, and you put that together.
. . . . .
Rosado puts that murder weapon into the [petitioner's] hands at, near or around the time of this murder.
. . . . .
. . . Not just because Rosado put it in his hands at, near or around the time

of the murder, not just because the 911 caller put it into his hands going into the house, not just because he admits that he used it to kill Paulino Santiago. Look at the physical evidence. It has a story to tell you and it doesn't lie.

N.T. 1/23/07 at 94, 134, 140, 146; Addendum at 1601a, 1641a, 1647a, 1653a.

[17]The statements about the 911 call which were made in the prosecutor's closing argument include:

> MR. GILSON: This is a person who calls within a minute of the murder, who doesn't have the time to even make up a story, doesn't even have the time to even think, pause or reflect upon what they're saying. They're simply answering questions put to her in a rapid-fire manner by a 911 operator who was answering those questions while still under the stimulation of a startling event which she just witnesses, which was the murder of a man, a man being carried out of a house who looks like he's dead.
>
> . . . . .
>
> But there's more evidence of this [petitioner's] guilt. You got that 911 call of a man with a rifle going into this house. And they admit, they admit no one else brought that rifle into this abandoned house. No one. They admit that he shot the victim with that rifle. So you take that admission that it was the [petitioner] and only the [petitioner] who was holding this rifle that night and you couple that with that 911 call, and that puts this [petitioner] carrying this rifle into that house and then a shot being fired.

N.T. 1/23/07 at 122, 140; Addendum at 1629a, 1647a; *see also* the final paragraph in Footnote 12 above.

[18]The prosecutor's offending closing argument concerning the police report includes:

> MR. GILSON: Nobody used that house to stash drugs and guns. Where was the stash? When the detectives got there, the police officer got there within minutes, they secured that scene. They searched that place from 8:36 upon their arrival until midnight when they left. Miller was testifying about the time when he searched it, but that place was being held for over four hours, gone through, searched top to bottom.
>
> Yeah, Miller didn't go into the basement. Miller might not have gone onto the third floor. But, folks, there were about twelve people in that house, uniformed detectives, divisional detectives, other homicide detectives, the crime scene guy. Miller didn't search everywhere. He takes this part, the hallway, where it seems like everything is isolated. Other people go into the basement, on the third floor and look. Just because Frankie Miller says he didn't do it doesn't mean it wasn't done.

N.T. 1/23/07 at 132-133; Addendum at 1639a-1640a.

[19]In closing, the prosecutor spoke of Francisco Santiago as follows:

> MR GILSON: And Francisco Santiago was taken right from that sidewalk down to Homicide to be interviewed and Detective Cruz told you that he went down there to provide assistance and if it was needed in interpreting that because he was

Petitioner's Memorandum at 59-60.

Once again, where there is an allegation of prosecutorial misconduct, the issue is whether the prosecutor's acts so infected the trial as to make the resulting conviction a denial of due process.

In its opinion, the trial court did not address this claim, among others, "for one or all of the following reasons: 1) the alleged error as stated is vague, 2) lack of specificity, or 3) the alleged error is not of record before this Court". *Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 30, (C.C.P. Philadelphia County, May 31, 2007); Addendum, B.  However, the Pennsylvania Superior Court, referring to Petitioner's "catch-all claim", opined as follows:

> In his fourth catch-all claim, [Petitioner] asserts prosecutorial misconduct based on a list of alleged misstatements of evidence and improper comments which he argues warrant a new trial.  He "summarizes" nine purported misstatements of the evidence, (*see* [Petitioner's] Brief at 53), and attempts to incorporate by reference another list of bullet points from his lengthy statement of facts which purport to document another fifteen misrepresentations.  All of these claims are waived for failure to follow each point with pertinent

---

bilingual, and that once they got down to Homicide, Francisco Santiago was fully cooperative, answered all of the questions and gave a statement.  That's what happened.

Then he comes in at a preliminary hearing shortly after the [petitioner] is arrested and brought back from New York City.  He testifies under oath.  It's the same story.  It's the same story.  That man shot my brother with a twenty-two caliber rifle through the heart in an abandoned house.  That's what he did.

Then he comes in and he testifies at a preliminary hearing or at a proceeding that occurred in May of 1984.  And it's the same testimony, the same exact testimony.  Not a single inconsistency that they can point to, not a single meaningful inconsistency.

Every time, unlike Danny Vargas, every time Francisco Santiago was asked to give the story about the night that his brother was murdered, he tells it the same way every time, and every time when he's asked to identify the man who killed him, he points the finger to that [petitioner] and says that's him, and they admit that it was him.

N.T. 1/23/07 at 136-137; Addendum at 1643a-1644a.

discussion and citation of authorities. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Murchinson*, 899 A.2d 1159, 1162 (Pa. Super. 2006) (declining to review claim where there was limited explanation and development of argument).

[Petitioner] follows these laundry lists with a few slightly more extended claims that the prosecutor improperly commented on his guilt and on the credibility of his witness, Vargas. These claims, heavily dependent on [Petitioner's] previous arguments about credibility, are equally unpersuasive. We review the prosecutor's comments in context, not in a vacuum. *See May, supra*. For example, the prosecutor's statement, "Twenty-four years later, and Paulino Santiago, he's still dead, And you, sir, are just as guilty as you were on that night," in the context of the discussion of the evidence incriminating [Petitioner], is not an impermissible expression of personal opinion. When the prosecutor analogized the death of Francisco Santiago's brother to his own five brothers, the trial court *sua sponte*, admonished him to avoid personalizing his comments. [Petitioner] made no further objection. (*See* N.T. Trial, 1/23/07 at 134). [Petitioner's] claim that the prosecutor personalized the argument, not raised contemporaneously at trial, is waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a).

[Petitioner] asserts that "each of these instances" constitutes a sufficient basis for a new trial; but also argues that "their cumulative effect" requires a new trial. ([Petitioner's] Brief, at 56).

[A]ppellant refers to his three previous claims and argues that the cumulative impact of the prosecutor's misconduct compels reversal . . . . This claim is mere makeweight, and a rather blatant attempt to bootstrap. We have found *no* misconduct on the part of the prosecutor, and no number of *failed* claims may collectively attain merit if they could not do so individually. Appellant's reliance upon error arising from the cumulative impact of "repeated *improper* remarks" is misplaced.

*Commonwealth v. Williams,* 615 A.3d 716, 722 (Pa. 1992) (emphasis in original); *see also Commonwealth v. Williams*, 896 A.2d 523, 548 (Pa. 2006). [Petitioner's] cumulative impact argument does not merit relief.

*Commonwealth v. Rolan*, 964 A.2d at 411; Response, Exhibit B. This claim, having been waived

by the Superior Court pursuant to an independent and adequate state law is subject to procedural

default. Though Petitioner asserts that the rule of waiver does not bar federal habeas review because

it is not firmly established and regularly followed, a state rule need not be applied "uniformly and

in all instances" to warrant the respect of a federal habeas court. It is adequate so long as it is

"'consistently or regularly applied'". *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997), *quoting*

*Johnson v. Mississippi*, 486 U.S. 578, 588-589 (1988); *see also Johnson v. Pinchak*, 392 F.3d 551

(3d Cir. 2004). The independent and adequate state procedural rule of waiver employed by the

Superior Court of Pennsylvania herein bars federal habeas review of this claim.[20]

---

[20]Even if this claim would be found not procedurally defaulted, there would be no basis for federal habeas corpus relief. Mr. Rolan argues that his claim should be reviewed *de novo* as the Superior Court waived it, not addressing the merits. It is noted that the Superior Court did address the merits of the portion of this claim dealing with Santiago's statement to police. In any event, whether reviewed *de novo* or pursuant to AEDPA' deferential standard of review, there is no basis for federal habeas relief for this claim.

The credibility of Daniel Vargas' testimony was thoroughly addressed by both sides. Petitioner asserts that the prosecutor made several misstatements concerning this testimony in his closing argument. During his argument, the prosecutor reviewed Vargas' testimony and compared it to his affidavit, pointing out discrepancies. He also argued that Vargas had opportunity to tell the police what he knew about the murder of Pauline Santiago prior to 1996; however, he did not do so. This was a fair argument.

Mr. Rolan also claims that the prosecutor argued that Edwin Rosado saw Petitioner with the rifle at the time of the shooting, and called it a blatant misrepresentation of the evidence. The record reveals that that is not exactly what the prosecutor said; he was properly commenting on the evidence presented at trial. It was also a fair response to defense counsel's statement of the evidence.

Additionally, Petitioner claims that the prosecutor misrepresented both the context and the contents of the 911 call. These alleged misrepresentations were logical arguments and inferences from the evidence. Moreover, the 911 call was played for the jury during summation, allowing the jury to make their own inferences from the call.

Mr. Rolan further complained that the prosecutor misrepresented the evidence by saying the house was searched for 3 ½ hours. The inadequacy of the crime scene was brought up in the defense closing, to which the prosecutor appropriately responded.

Francisco Santiago's statement to police being mentioned in the prosecutions' closing is another subject with which Mr. Rolan has taken issue. Though the statement was mentioned, the court sustained Petitioner's objection made at the time, and the statement was never admitted into evidence. The remarks of the prosecutor concerning Francisco Santiago were in response to defense counsel's comments in his closing about Mr. Santiago's credibility.

5.  Violation of Petitioner's Right to Confront the Witnesses against Him

Mr. Rolan also claims that, over his objection, the trial court admitted into evidence a cassette tape of an anonymous 911[21] caller who did not witness the victim's shooting, thus depriving him of the right of confrontation.

It is in *Crawford*, 541 U.S. at 59 (2004) that the United States Supreme Court notes that

---

The prosecutor's comments were not improper and they did not deprive Mr. Rolan of fundamental fairness. Furthermore, the trial court instructed the jurors that their recollections of the evidence were controlling, not counsel's recollections.  It is presumed that the jury followed the trial court's instructions.  This claims does not warrant federal habeas review or relief.

[21]The 911 call at issue reads:

| | | |
|---|---|---|
| Radio: | Police Radio, 164, may I help you? | |
| Caller: | Yeah, there's a shooting around 16th and Wallace and they killed a guy. | |
| Radio: | Do you know, what do you see maam? | |
| Caller: | The guy, they took him out of old house, I think he's dead. | |
| Radio: | What, I mean did you hear gunshots or did you (unreadable). | |
| Caller: | Yes we did, we heard shooting. | |
| Radio: | Where? | |
| Caller: | 16th and Wallace. | |
| Radio: | 17th and Wallace? | |
| Caller: | 16th. | |
| Radio: | Alright, you hear, you see anybody with a gun? | |
| Caller: | Yeah, we seen a, a rifle. | |
| Radio: | Where's the guy?  What did he look like? | |
| Caller: | I don't know, he went running into the old house. | |
| Radio: | He ran into the house now? | |
| Caller: | I don't know, there's no cops around. | |
| Radio: | Did you see who did it? | |
| Caller: | No. | |
| Radio: | Well yeah, but where's the guy that's been shot? | |
| Caller: | He's right, they took him out from the old house, he's in the corner. | |
| Radio: | He's laying on the ground? | |
| Caller: | Yeah. | |
| Radio: | Alright, hold on . . . . . | |
| F.B.: | Fire Department Rescue . . . . Fire Rescue. | |
| Radio: | Yeah, she said somebody's been shot on the highway 16 and Wallace. | |
| F.B.: | On the way. | |
| Radio: | Your on the way? | |
| F.B.: | Yeah, be down in a few seconds. | |
| Radio: | Thank you, alright. | |

Appendix, Volume 4 at 1795a.

"[o]ur cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine". "The lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements." *USA v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005). The Supreme Court further opined in *Davis v. Washington*, 547 U.S. 813, 822 (2006):

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Speaking specifically, "[a] 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance". *Id.* at 827. "[T]he elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." *Id.* at 827.

The trial court opined herein:

> The statements made by the anonymous caller were corroborated by Daniel's, Edwin's, and Francisco's accounts of the circumstances leading up to and following the shooting. The 911 call was made on May 13, 1983 at 8:46 p.m., only minutes after [] Pauline was shot in a vacant house at 1629 Wallace Street. Francisco stated that he saw the [petitioner] enter the house, a few minutes after Paulino, carrying a rifle. Francisco stated, and Edwin confirmed, that he carried Paulino's body outside following the shooting and placed

him on the ground. Both Edwin and Daniel testified that there was a small crowd out on the corner of 17th and Wallace Streets who would have been in the position to observe the events leading up to and following the shooting. The testimony of Francisco, Edwin, and Daniel provided sufficient independent corroboration to warrant the admission of the 911 call made by an anonymous caller as either an excited utterance or present sense impression exception to the hearsay rule. *See Hood*, 872 A.2d at 184. Accordingly, this claim lacks merit.

The [petitioner] asserts that the admission of the contents of the 911 call violated his right to confront his accuser. The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides the [petitioner] with the right to confront the witness arrayed against him. This provision bars the admission of testimonial hearsay when the declarant is unavailable to testify. *Commonwealth v. Gribble*, 590 Pa. 647, 863 A.2d 455, 464 n.7 (2004) (*citing Crawford v. Washington*, 541 U.S. 36, 53 (2004)). Only testimonial statements "cause the declarant to be a witness within the meaning of the Confrontation Clause." *Davis v. Washington*, ___ U.S. ___, 126 S.Ct. 2266, 2273 (2006) (*citing Crawford*, 541 U.S. at 51). Statements made by a declarant to a 911 operator are not testimonial if they are elicited to enable the police to respond to a present emergency rather than to learn what happened in the past. *Id.* at 2276-2277. An exchange may become testimonial, and hence inadmissible, when the primary purpose of the exchange shifts from responding to an emergency to investigation of a crime. *Id.* (holding declarant's statements to a 911 operator identifying the defendant as her assailant while the attack was ongoing were non-testimonial because they were elicited to resolve the present emergency.)

It is clear from the contents of the 911 call that the questions posed to the declarant sought to determine the location of the shooting, the location of the victim, and whether the perpetrator was armed and remained at that location. This information was necessary for the police to appropriately respond to a present emergency, i.e., the victim of a shooting. The content of the 911 call was not testimonial but was rather made in an effort to report a crime and seek help for the victim. "No witness goes into court to proclaim an emergency and seek help." *Id.* at 241 (quotations omitted). Accordingly, this claim is without merit.

> The [petitioner] asserts that this Court erred in admitting the contents of the 911 call because its probative value was outweighed by its prejudicial effect. This claim is without merit. The content of the 911 call was probative as it tended to show that Paulino was shot in a house near the corner of 16th and Wallace Streets on the evening of May 13, 1983, subsequently carried outside, and placed on the ground. The caller did not identify the [petitioner] as the shooter, nor did her statements foreclose the [petitioner] from presenting his self-defense theory to the jury. The content of the 911 call was relevant and not unduly prejudicial. *See* Pa.R.E. 403. Accordingly, this claim lacks merit.

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 20-22 (C.C.P. Philadelphia County, May 31, 2007); Addendum, B.

The Superior Court of Pennsylvania affirmed the trial court, opining:

> [Petitioner's] fifth claim challenges the trial court's admission of a 911 call contemporaneous with the shooting, made at 8:46 P.M., which reported that someone had been shot and mentioned, on questioning from the radio dispatcher, that a man with a rifle was seen entering the abandoned building. The trial court properly admitted the call under Pa.R.E. 803(1) and (2) as a present sense impression and an excited utterance. *See also Davis v. Washington*, 547 U.S. 813, 827-28 (2006) (statements made in response to 911 operator's questions to enable police assistance to meet ongoing emergency caused by physical threat not "testimonial" and, therefore, not subject to confrontation clause). [Petitioner's] claim that the caller never said she saw someone run into the house with a rifle, (*see* [Petitioner's] Brief, at 64), is a tortured distortion of the record and clearly erroneous. The trial court properly admitted the evidence. *Davis, supra; Cooper, supra*. His claim merits no relief.

*Commonwealth v. Rolan*, 964 A.2d at 411; Response, Exhibit B.

The situation which ultimately gave rise to the present petition for writ of habeas corpus was certainly an ongoing emergency. The 911 caller described the events that she had just seen, and clearly the 911 operator questioned the caller to respond to the immediate and ongoing threat she was reporting. It is more than evident that this claim provides no basis for federal habeas corpus relief.

6. <u>Violation of Petitioner's Right not to be placed in Jeopardy Twice for the Same Offense</u>

Mr. Rolan finally claims that the trial court denied his request to preclude the prosecution from making arguments or introducing evidence that Petitioner shot the victim while trying to take money from him, despite Petitioner's prior acquittal on the charge of robbery for the events arising out of the shooting. *See* Petition at 11.

Double jeopardy prohibits an individual's retrial for an offense of which he has been acquitted. However, in *Dowling v. United States,* 493 U.S. 342 (1990), the Supreme Court declined "to extend *Ashe v. Swenson* [397 U.S. 436 (1970)] and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it related to alleged criminal conduct for which a defendant has been acquitted". *Dowling,* 493 U.S. at 348.

As noted by the trial court:

> In 1984, the [petitioner] was convicted of first degree murder and possessing an instrument of crime, but acquitted of the charge of robbery. Evidence which indicated that the [petitioner] argued with Paulino over the proceeds from a drug sale minutes before the shooting and that he told Paulino to "give him money" immediately before killing him are admissible to show motive and are a logical part of the events leading to the offenses for which the [petitioner] was tried. The [petitioner] was not tried again on a charge of robbery. The Commonwealth neither argued to the jury that the [petitioner] committed a robbery, nor was a charge of robbery submitted to the jury. Accordingly, the admission of [petitioner's] statements to Paulino leading up and immediately prior to the shooting did not violate the double jeopardy provisions of the Pennsylvania and U.S. Constitutions (internal citation omitted).

*Commonwealth v. Rolan*, Docket No. CP-51-CR-0228931-1984, slip op. at 16-17 (C.C,P. Philadelphia County, May 31, 2007); Addendum, B.

The Superior Court of Pennsylvania affirmed Mr. Rolan's judgment of sentence, opining as follows:

> The last claim is that admission of Francisco Santiago's testimony that [Petitioner] demanded money before shooting Paulino, after he had been previously acquitted of robbery, violated his constitutional protection against double jeopardy. As [Petitioner] was not charged with robbery in the second trial, his more specific complaint is a collateral estoppel issue, that the court declined his motion *in limine* to exclude reference to the demand for money, which suggested a motive for the killing.

> > In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case. We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, could have grounded its verdict upon an issue other than that which the [petitioner] seeks to foreclose from consideration. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes.

> *Commonwealth v. States,* 938 A.2d 1016, 1021 (Pa. 2007) (internal quotation marks omitted).

> > The court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged, as appellant would have preferred.

Commonwealth v. Lark, 543 A.2d 491, 501 (Pa. 1988).

Instantly, [Petitioner] cites *Commonwealth v. Cohen*, 605 A.2d 1212 (Pa. 1992), and *Commonwealth v. Tolbert*, 670 A.2d 1172 (Pa. Super. 1995) in support of his argument that reference to a demand for money should have been excluded. The cases are easily distinguished. In both the defendants were tried for lesser degrees of homicide after acquittal of first degree murder. The issue was whether evidence of specific intent could be introduced at the subsequent trial for a lesser degree of murder.

Here, the facts materially differ. [Petitioner] was not tried for a different type of theft after acquittal on robbery. He was retried for murder and PIC, after the first jury convicted him on these charges. His argument that the robbery acquittal deprived the Commonwealth of the "only theory of the shooting that the Commonwealth put forth" ([Petitioner's] Brief, at 68), which violated his rights against double jeopardy "and greatly prejudiced him" (*id.* at 69-70) is clearly erroneous as the first jury acquitted him of robbery but convicted him of first degree murder nevertheless. Similarly, his reliance on *Ashe v. Swenson*, 397 U.S. 436, 442-46 (1971), involving a subsequent prosecution for robbery of a second victim, when the petitioner had previously been acquitted of robbery of another victim in the same episode, is misplaced.

In any event, we find more pertinent analysis in *States, supra*: "[W]here an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes." *Id.* at 1022 (citations omitted). Here, the previous acquittal on robbery clearly did *not* resolve the issue of murder, even for the first jury, which voted to convict [Petitioner]. The trial court also properly admitted the testimony of the demand for money as part of the history and natural development of the case. *See Lark, supra* at 501. [Petitioner's] final claim does not merit relief.

*Commonwealth v. Rolan*, 964 A.2d at 412-413 (footnotes omitted); Response, Exhibit B.

The issue of whether or not Mr. Rolan committed a robbery was resolved at his first trial, and it was not relitigated at his second trial. While the jury acquitted Petitioner of robbery, it convicted him of first degree murder. As noted by the state court, the demand for money is part of the history

and development of the case. The Pennsylvania Superior Court's rejection of Mr. Rolan's double jeopardy claim is not contrary to, nor an unreasonable application of, United States Supreme Court precedent. This claim presents no basis for federal habeas corpus relief.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:


 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**Robert N.C. Nix, Sr.  Federal Building, Suite 211**
**900 Market Street**
**PHILADELPHIA, PENNSYLVANIA  19107-4228**

**Chambers of**
**M. FAITH ANGELL**                                    **P:    (215) 597-6079**
**United States Magistrate Judge**                     **F:    (215) 580-2165**

*FAX / MAIL COVER SHEET*

**CASE NO.     08-5438**                    **DISTRICT COURT JUDGE:** BMS
                                                         267-299-5073

**TODAY'S DATE**:    July 29, 2010          **LAW CLERK'S INITIALS**: LFS


**VIA FAX:**

Bruce P. Merenstein, Esq./Samuel W. Silver, Esq.          215-751-2205

Marilyn F. Murray, Esq./Thomas W. Dolgenos, Esq.          215-686-5725